IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES *ex rel*. JAMES CARTER, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE BOARD OF GOVERNORS OF THE ) <br> FEDERAL RESERVE, and ) <br> ) <br> THE FEDERAL RESERVE BANK OF NEW ) <br> YORK, ) <br> ) <br> Defendants. ) | Civil No. 12-00129-CV-W-HFS <br><br> **CASE FILED UNDER SEAL PURSUANT TO FALSE CLAIMS ACT, 31 U.S.C. §§ 3730(b)(2), (3)** |

# MOTION OF THE UNITED STATES TO DISMISS
## *QUI TAM* ACTION
### *(With Supporting Suggestions Incorporated)*

Pursuant to FED. R. CIV. P. 12(b)(1), 12(b)(6), the United Stats of America respectfully moves the Court to dismiss the QUI TAM COMPLAINT FILED IN CAMERA UNDER SEAL [Doc. 1] filed herein by *pro se* plaintiff James Carter ("Carter"). As set out herein, the allegations asserted by Carter in the QUI TAM COMPLAINT fall outside the scope of the *qui tam* provisions of the False Claims Act in that the information and alleged "fraud" relied upon by Carter have been publicly disclosed and, moreover, the proposed defendants – the Board of Governors of the Federal Reserve and the Federal Reserve Bank of New York ("the Federal Reserve") – are instrumentalities of the federal government entitled to sovereign immunity and not proper defendants under the False Claims Act. In the alternative, Carter's QUI TAM COMPLAINT must be dismissed because, in the Eighth Circuit, such an action may not be maintained by a *pro se* litigant. In support of this motion, the United States further submits:

## I. Factual overview

In his QUI TAM COMPLAINT, Carter alleges that the Federal Reserve systematically and improperly obtains a "purloined profit" that is concealed from the federal government by the Federal Reserve through "euphemistic smoke and mirrors." QUI TAM COMPLAINT, Exhibit A. Carter estimates that the total amount of funds concealed since 2006 is approximately $7 trillion. As support for his conclusions, Carter relies on the 2009 ANNUAL REPORT TO CONGRESS BY THE BOARD OF GOVERNORS, the SEPTEMBER 2009 TREASURY BULLETIN, the CITIZEN'S GUIDE TO THE 2010 FINANCIAL REPORT OF THE UNITED STATES GOVERNMENT, the GAO FINANCIAL AUDIT: BUREAU OF THE PUBLIC DEBT'S FISCAL YEARS 2010 AND 2009 SCHEDULES OF FEDERAL DEBT, and other public documents. Indeed, the idea that the Federal Reserve is engaging in an ongoing "Ponzi scheme" and utilizes "creative accounting" so that "profit can easily be reclassified as expense," has been advanced publicly by other theorists. *See, e.g.*, C. EDWARD GRIFFIN, THE CREATURE FROM JEKYLL ISLAND, www.jesus-is-savior.com/Evils%20in%20Government/Federal%20Reserve%20Scam/federal_reserve.htm). And in actuality, Carter himself – in an earlier publication[1] of the document he attaches to and principally relies upon in the QUI TAM COMPLAINT – has noted that, once the public records are examined, "the rest of the analysis is an inescapable mathematical progression." JAMES CARTER, RIP-OFF BY THE FEDERAL RESERVE, www.freepatriot-press.com/2011/06/rip-off-by-federal-reserve.html.

---

[1] With only very minor variations, Carter's Exhibit A ("Rip-Off by the Federal Reserve") has been previously published on numerous Internet web sites, including EndoftheUSA.com, Scribd.com, RTR.org, TheMarketOracle.co.uk, RonPaulForums.com, TheDebtWeOwe.com, NolanChart.com, and ConspiracyArchive.com. These are generally published under screen names such as "Olde Reb," "Jim," "Sartre," "OldeReb1," and "Liberty." An example of one of these publications, dated January 10, 2011, is attached hereto as "Exhibit A-US." For purposes of this motion to dismiss, the United States will assume that Carter is the original author of "Rip-Off by the Federal Reserve."

## II. *Qui tam* actions under the False Claims Act

The False Claims Act ("FCA") establishes a unique form of litigation through the *qui tam* mechanism. The *qui tam*[2] provisions of the FCA provide a special means for the United States to recover damages suffered as a result of fraud or false claims, through the assistance of private parties ("relators") who file suit "for the person and for the United States Government." 31 U.S.C. § 3730(b). Under this statute, the relator initially files a complaint under seal and serves it and a statement of evidence on the United States. 31 U.S.C. §§ 3730(b)(1), (2). The United States thereafter has 60 days (and any extensions granted by the district court) to investigate the allegations and elect whether or not to intervene in the litigation. 31 U.S.C. §§ 3730(b)(2), (3). The Act provides for trebling of the damages the Government has sustained, and civil penalties of between $5,500 and $11,000 for each false claim submitted. 31 U.S.C. 3729(a); 64 Fed. Reg. 47,099, 47,104 (1999). Damages are liberally calculated to make certain that they "afford the government complete indemnity for the injuries done it." *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 549, 63 S.Ct. 379, 387 (1943).

If the United States intervenes in the case, the Government assumes "the primary responsibility for prosecuting the action," and is not bound by an act of the relator. 31 U.S.C. § 3730(c)(1). The relator remains a party to the suit, but the Government may settle the case over

---

[2] *Qui tam* is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means "who pursues this action on our Lord the King's behalf as well as his own." The phrase dates from at least the time of Blackstone.

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 769 n.1, 120 S.Ct. 1858, 1860 n.1 (2000)

the relator's objection or may seek to limit his participation in the litigation. 31 U.S.C. § 3730(c)(2)(B), (C). Conversely, if the United States declines to intervene in the case, the relator has the right to proceed with the action. 31 U.S.C. § 3730(c)(3). However, that right is circumscribed by a number of limitations designed to ensure that the United States retains control over a declined FCA action. For example, the relator cannot dismiss the action without the written consent of the Attorney General. 31 U.S.C. § 3730(b)(1). In addition, a court may stay discovery in the *qui tam* action if it would interfere with the Government's investigation or prosecution of another matter. 31 U.S.C. § 3730(c)(4). And, even when the Attorney General initially declines to intervene in the suit, the district court "may nevertheless permit the Government to intervene at a later date upon a showing of good cause." 31 U.S.C. § 3730(c)(3).

The FCA was first enacted during the Civil War as a response to rampant military procurement fraud. As originally enacted, the FCA proscribed false claims and false statements in support of claims seeking to obtain a benefit – money or property – from the U.S. Treasury. A dispute arose among the courts over whether false statements by someone who <u>owed</u> the Government money, which were made to avoid having to pay, were actionable under the FCA. Congress subsequently amended the FCA to make clear that it did not matter who held the money or property at the time the false statements were made, so long as the false statements were being made in order to deprive the Government of a benefit. The new section provides that "[a]ny person who . . . knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government, . . . is liable to the United States." 31 U.S.C. § 3729(a)(7). This section is known as the "reverse" false claims provision.

4

The function of § 3729(a)(7) is to provide liability comparable in scope with that under the affirmative false claims provisions of §§ 3729(a)(1) and (a)(2), except that the money or property moves in the opposite (reverse) direction. As explained by one court:

> In a reverse false claims suit, the defendant's action does not result in improper payment by the government to the defendant, but instead results in no payment to the government when a payment is obligated.

*United States ex rel. Bain v. Georgia Gulf Corp.*, 386 F.3d 648, 653 (5th Cir. 2004). The legislative history confirms this view. *See*, *e.g.*, S. REP. NO. 99-345, at 15 (1986), 1986 U.S.C.C.A.N. at 5280 (a person "making a material misrepresentation to avoid paying money owed the Government should be equally liable" with one who does so to obtain money).

In this case, even though Carter's broad allegations of misconduct by the Federal Reserve generally fall within the ambit of the "reverse" false claims provision, as set out *infra*, other aspects of his case fail to meet the requirements for a cognizable FCA *qui tam* action. As such the United States seeks a dismissal of this case. To that end, the FCA authorizes the Attorney General to seek a dismissal of a *qui tam* action – even over a relator's objection:

> The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion.

31 U.S.C. § 3730(c)(2)(A). The United States holds this power to dismiss even in case where it has not yet opted to intervene. *See, e.g., Swift v. United States*, 318 F. 3d 250, 251 (D.C. Cir. 2003) (rejecting a relator's claim that United States must first intervene before moving to dismiss action); *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 753 n.10 (9th Cir. 1993) (*citing Juliano v. Federal Asset Disposition Ass'n*, 736 F. Supp. 348 (D.D.C. 1990), *aff'd*, 959 F.2d 1101 (D.C. Cir. 1992) [Table]).

5

## III. Carter's *qui tam* is based on publicly disclosed information

Under the original 1863 Act, there was no jurisdictional bar to an FCA *qui tam* action, and there was only a minimal role for the government in any *qui tam* suit. Since 1863, however, "[t]he history of the Act demonstrates repeated congressional efforts to resolve a tension between encouraging private citizen involvement in exposing fraud against the government while preventing opportunistic suits by private persons who became aware of fraud but played no part in exposing it." *United States ex rel. Barth v. Ridgedale Elec., Inc.*, 44 F.3d 699, 702 (8th Cir. 1995). In the late 1930s, several *qui tam* actions were brought by persons who merely copied information already contained in government criminal indictments.[3] In 1943, a divided Supreme Court upheld such a practice as in accord with the then plain language of the statute. *United States ex rel. Marcus v. Hess*, *supra*, 317 U.S. at 546, 63 S.Ct. at 385.

In response to the *Hess* case, in 1943, Congress created the first jurisdictional bar in order to eliminate these cases. 57 Stat. 608. With the new jurisdictional bar, Congress created an objective test, the purpose of which was to bar a relator upon a showing that the federal government already had the information and thus that the relator was bringing no new cause of action to the table. The 1943 amendments for the first time additionally required the government to appear or to decline to appear as a party in the relator's action. If the United

---

[3] These actions were described by then Attorney General Francis Biddle as "mere parasitical actions." H.R. REP. NO. 263, 78th Cong., 1st Sess. 2 (1943). *See also United States v. Baker-Lockwood Manufacturing Co.*, 138 F.2d 48, 49-50 (8th Cir. 1943), *vacated*, 321 U.S. 744 (1944) (describing three civil actions under the FCA resulting from an indictment; one by the Government and two by different relators in different district courts). One court referred to the practice as the "'unseemly races to the courthouses' antics in *qui tam* cases." *United States ex rel. Bayarsky v. Brooks*, 110 F. Supp. 175, 179-80 (D.N.J. 1953).

6

Case 4:12-cv-00129-HFS   Document 4   Filed 03/30/12   Page 6 of 20

States declined to appear, and if the evidence or information in the relator's complaint was already in the possession of the United States at the time the suit was brought, the amendments jurisdictionally barred the relator's action.  Specifically, one subsection provided that the district court would lose jurisdiction to proceed over the relator's declined *qui tam* action if "such suit was based upon evidence or information in the possession of the United States . . . at the time such suit was brought."  Act of Dec. 23, 1943, Pub. L. No. 213, ch. 377, 57 Stat. 608, 609, Rev. Stat. 3491(C), *codified at* 31 U.S.C. § 232(C) (1976).

The source of the Government's prior knowledge could range from formal investigations, *United States ex rel. Wisconsin v. Dean*, 729 F.2d 1100 (7th Cir. 1984); *United States ex rel. MacFarlane v. Hutchinson,* 519 F. Supp. 563 (D. Colo. 1981), to mere newspaper articles.  *Wisconsin v. Dean, supra*; *United States ex rel. Greenberg v. Burmah Oil Co.*, 558 F.2d 43 (2d Cir. 1977); *United States ex rel. Thompson v. Hays*, 432 F. Supp. 253 (D.D.C. 1976).  Moreover, the evidence possessed by the United States did not need to be identical to the information in the hands of the relator in order to bar the suit.  *United States ex rel. Weinberger v. Florida*, 615 F.2d 1370, 1371 (5th Cir. 1980); *Pettis ex rel. United States v. Morrison-Knudson Co.*, 577 F.2d 668, 674 (9th Cir. 1978).  Further, the bar was applied even if the government had taken no action based on the information.  *Wisconsin v. Dean*, *supra*; *Safir v. Blackwell*, 579 F.2d 742 (2d Cir. 1978); *Pettis ex rel. U.S. v. Morrison-Knudson Co.*, 577 F.2d 668 (9th Cir. 1978); *U.S. ex rel. Aloff v. Aster*, 176 F. Supp. 208 (E.D. Pa. 1959), *aff'd*, 275 F.2d 281 (3d Cir. 1960); *United States ex rel. McCans v. Armour & Co.*, 146 F. Supp. 546 (D.D.C. 1956), *aff'd*, 254 F.2d 90 (D.C. Cir. 1958).

Under the 1943 amendment, a *qui tam* suit could even be barred "on the ground of information technically in the government's possession, even if no one in the government knew about the information." *Minnesota Association of Nurse Anesthetists v. Allina Health System Corp.*, 276 F.3d 1032, 1042 (8th Cir. 2002). In part for this latter reason, in 1986, the *qui tam* provisions of the FCA were again amended by Congress.

> In an apparent attempt to correct this shortcoming of the 1943 version of the Act, Congress switched from barring suit on the ground of government possession of information before the relator filed suit to barring suit on the ground of public disclosure of such information. Congress evidently assumed that if information was publicly disclosed, the government was likely to discover it on its own, without the need for a *qui tam* relator.

*Id*. The 1986 amendment – with only slight amendments – is embodied in the current law:

> The court shall dismiss [a *qui tam*] action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed –
>
>> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A). For purposes of the jurisdictional bar, an "original source" is defined as "an individual who either (1) prior to a public disclosure under subsection (e)(4)(A), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B).

8

Case 4:12-cv-00129-HFS   Document 4   Filed 03/30/12   Page 8 of 20

In this case, it is beyond question that the "transactions" relied upon by Carter are previously publicly disclosed matter. Indeed, Carter makes no claim to being in possession of secret or unique information, but only relies upon facts and dat found within the public domain. Consequently, the issue of jurisdiction under § 3730(e)(4)(A) turns on whether Carter meets the requirements of an "original source." The Eighth Circuit has noted that the requirements for an "original source" include three components, to wit: (1) the relator must have "direct" knowledge of the information on which the allegations are based, (2) the relator must have "independent" knowledge of the information on which the allegations are based, and (3) the relator must have voluntarily provided the information to the Government prior to any public disclosures and before filing the *qui tam* suit. *Minnesota Association of Nurse Anesthetists v. Allina Health System Corp.*, *supra*, 276 F.3d at 1050. Carter cannot satisfy any of the requirements.

In *United States ex rel. Barth v. Ridgedale Elec., Inc.*, 44 F.3d 699 (8th Cir. 1995), the Court found that:

> "Direct" knowledge under the [FCA] has been defined as knowledge marked by absence of an intervening agency or unmediated by anything but [the plaintiff's] own labor. A relator is said to have direct knowledge of fraud when he saw [it] with his own eyes.

*Id*. at 703. Such a definition of direct knowledge is required to properly limit the application of the FCA. As noted by the *Barth* court, "[t]he direct knowledge requirement was intended to avoid parasitic lawsuits by 'disinterested outsider[s]' who 'simply stumble across an interesting'" public document. *Id.* (*quoting*, *in part*, *United States ex rel. Stinson, Lyons, Gerlin & Bustamante v. Provident Life & Accident Ins. Co.*, 721 F.Supp. 1247, 1258 (S.D. Fla.1989)). While Carter may have done research into his contentions, ultimately "collateral research and

9

investigations . . . [do] not establish 'direct and independent knowledge of the information on which the allegations are based within the meaning of § 3730(e)(4)(B).'" *Barth*, 44 F.3d at 703 (*quoting in part*, *United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1159 (2d Cir. 1993)).

Likewise, and for similar reasons, Carter's knowledge is not independent. In this regard, "[a] putative relator's knowledge is . . . 'independent' if the knowledge is not dependent on public disclosure." *United States ex rel. Davis v. Prince*, 753 F.Supp.2d 569, 582 (E.D. Va. 2011). *See also United States ex rel. Atkinson v. P.A. Shipbuilding Co.*, 473 F.3d 506, 509 (3d Cir. 2007) (no original source where relator's theory was developed only from review of information in public domain). In other words, a relator may come upon knowledge of a fraud that is confirmed by other publicly disclosed information. The relator's *qui tam* is not barred so long as his knowledge was developed independently of the publicly disclosed information.

Finally, it is evident that the principles (and even mathematical calculations) that form the basis of carter's *qui tam* were publicly disclosed before the current lawsuit was filed on January 28, 2012. Certainly, if someone other than Carter is the original source of the "Rip-Off by the Federal Reserve" articles found on the Internet that all predate the filing of this lawsuit, then he cannot fall under the "original source" definition set out in 31 U.S.C. § 3730(e)(4)(B). *Compare United States v. Warden*, 2009 WL 935805, op. at 10 (N.D. Ill. Apr. 2, 2009) (no original source where "the scheme described in [the plaintiff's] complaint is rooted in . . . articles that were published well before the plaintiff filed this suit"). However, even assuming that Carter is the original author, the pre-suit public disclosure of the information by Carter on the Internet subjects his case to the jurisdictional bar. Courts have held that a relator may inadvertently bar his own

10

suit if he discloses his allegations prior to bringing the suit and, thus, cannot qualify under the "original source" exception. *See*, *e.g.*, *United States ex rel. Aflatooni v. Kitsap Physicians Services*, 163 F.3d 516, 521 (9th Cir. 1999); *United States ex rel. Biddle v. Board of Trustees of the Leland Stanford, Jr. University*, 147 F.3d 821, 828 (9th Cir. 1998) (the relator's own disclosures to the press were held to bar his lawsuit).

In this case, Carter's disclosures were made on the Internet as opposed to a traditional media source such as newspapers. Courts, however, have consistently held that such disclosures are "public" under 31 U.S.C. § 3730(e)(4)(A), (B). *See, e.g., United States ex rel. Brown v. Walt Disney World Co.*, 2008 WL 2561975, op. at *4, *4 n. 7 (M.D. Fla. June 24, 2008) ("the internet can qualify as 'news media' within the meaning of" the FCA and finding that Wikipedia qualifies as the news media); *United States ex rel. Repko v. Guthrie Clinic, P.C.*, 2011 WL 3875987, op. at *7 (M.D. Pa. Sep. 1, 2011); *United States ex rel. Nowak v. Medtronic, Inc.*, 2011 WL 3208007, op. at *45 (D. Mass. July 27, 2011); *United States ex rel. Jones v. Collegiate Funding Services*, 2010 WL 5572825, op. at *31 (E.D. Va. Sept.21, 2010); *United States ex rel. Davis v. Prince*, 753 F.Supp.2d 569, 585 (E.D. Va. 2011) (report "was publicly disclosed, given that the [report] was 'generally available to the public' beginning in December 2007 when it was posted on an internet website maintained by the online publication Talking Points Memo"); *United States ex rel. Barber v. Paychex, Inc.*, 106 A.F.T.R.2d 5294, *25 (S.D.Fla. 2010) ("newspaper and magazine articles, court decisions, cable news shows, securities filings, analyst reports and internet websites – constitute the kind of 'public disclosure' covered by" the FCA).

11

## IV. Carter's purported *qui tam* action against the Federal Reserve presents no justiciable case or controversy.

It is well established that a *qui tam* suit against a federal agency or employee presents no justiciable case or controversy, as required by the United States Constitution. U.S. CONST. art. III. *See also Secretary of State of Maryland v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 955 n.4, 104 S.Ct. 2839, 2845 n.4 (1984) (Article III's case or controversy requirement is jurisdictional). In any *qui tam* action, the United States is the real party in interest. *Stoner v. Santa Clara County Office of Education*, 502 F.3d 1116, 1126 (9th Cir. 2007). Thus, in a *qui tam* action naming federal agencies and officials as defendants, a relator is essentially suing the United States in the name of the United States. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985) (a suit against a federal officer acting in an official capacity is a suit against the United States); *Daly v. Department of Energy*, 741 F. Supp. 202, 204 (D. Colo. 1990) (a suit against a federal agency constitutes a suit against the United States). Inasmuch as such a suit is tantamount to a suit by the United States against the United States, it presents no justiciable case or controversy.

> [C]ourts only adjudicate justiciable controversies. They do not engage in the academic pastime of rendering judgments in favor of persons against themselves.

*United States v. I.C.C*, 337 U.S. 426, 430, 337 S.Ct. 1410, 1413 (1949). *See also Juliano v. Federal Asset Disposition Assoc*iation, 736 F. Supp. 348, 352-53 (D.D.C. 1990) ("[P]laintiff and defendant are one. It appears that the only person who would benefit by forcing . . . a transfer of millions of dollars from one government account to another would be the *qui tam* plaintiff, who by law is entitled to share in the recovery").

In this case, Carter acknowledges that the Federal Reserve "operates an agency of the U.S. government," but Carter argues that the Federal Reserve "fails to exhibit normal characteristics of an agency." QUI TAM COMPLAINT ¶ 3, at 1-2. While it is true that the Federal Reserve is a unique instrumentality of the federal government, it nonetheless is a part of the federal government such that a *qui tam* action against the Federal Reserve is a case by the United States against the United States and, thus, presents no justiciable case or controversy.

The test for determining whether the Federal Reserve may be named as a proper defendant in a *qui tam* case can be resolved in two different manners. First, if the Federal Reserve is an "instrumentality of the federal government," then it cannot be a *qui tam* defendant. Alternatively (albeit similarly), if the Federal Reserve enjoys the protection of sovereign immunity, then it cannot be a *qui tam* defendant. *See*, *e.g.*, *Wood ex rel. U.S. v. American Institute in Taiwan*, 286 F.3d 526, 532-33 (D.C. Cir. 2002) (finding that the American Institute in Taiwan enjoyed sovereign immunity and, thus, could not be sued in a FCA *qui tam* action); *Galvan v. Federal Prison Industries, Inc.*, 199 F.3d 461, 463 (D.C. Cir. 1999) (finding that Federal Prisons Industries, Inc. was "a federal instrumentality" and thus could not be sued in a FCA *qui tam* action). The Federal Reserve satisfies both of these interrelated questions.

### 1. The Federal Reserve is an instrumentality of the United States.

The Federal Reserve Act established the federal reserve banks as part of the Federal Reserve System in 1913. 12 U.S.C. §§ 221, *et seq.* The preamble to the Federal Reserve Act states that its purpose is to "provide for the establishment of Federal Reserve Banks, to furnish an elastic currency, to afford means of rediscounting commercial paper to establish a more effective supervision of banking in the United States, and for other purposes." FEDERAL RESERVE ACT, ch. 6, 38 Stat. 251 (1913). The system consists of twelve federal reserve banks and a Board of

Governors.  Members of the Board are appointed by the President with the advice and consent of the Senate. 12 U.S.C. § 241.  The Board oversees the federal reserve banks and has additional enumerated powers to control the operations of the banks.  12 U.S.C. § 248.

In *First National City Bank v. Banco Para El Comercio Exterior de Cuba,* 462 U.S. 611, 103 S.Ct. 2591 (1983), the Supreme Court generally defined a government instrumentality:

> A typical government instrumentality . . . is created by an enabling statute that prescribes the powers and duties of the instrumentality, and specifies that it is to be managed by a board selected by the government in a manner consistent with the enabling law.

*Id*. at 624, 103 S.Ct. at 2599.  The Federal Reserve conforms to the general description of government instrumentalities as enunciated in *First National City Bank.*  It was established directly by Congressional legislation for the public purpose of increased control of the nation's currency and banking system.  Although it consists of partially-independently-owned corporations, it nonetheless exists only by virtue of the enabling statute and possesses only the powers granted by the legislation. Moreover, the individual banks are supervised by an entity that bears the hallmarks of a federal agency, in that the Board of Governors is subject to more direct political control via the Presidential appointment and Senate confirmation of its members.  Consequently, it is unsurprising that the Eighth Circuit has unequivocally held:

> In light of the important governmental functions performed by the federal reserve banks and the United States Supreme Court's willingness to hold that financial institutions performing even fewer governmental functions are federal instrumentalities, <u>we hold that the federal reserve banks are instrumentalities of the federal government</u>.

*Federal Reserve Bank of St. Louis v. Metrocentre Imp. Dist. No. 1, City of Little Rock*, 657 F.2d 183, 186 (8th Cir. 1981) (*emphasis added*) (also noting that the "holding is consistent with other circuits that have faced this question.").

14

## 2. The Federal Reserve is protected by sovereign immunity.

The Federal Reserve enjoys the status of a non-appropriated fund instrumentality ("NAFI") that receives no funding through congressional appropriations. *Albrecht v. Committee on Employee Benefits of Federal Reserve Employee Benefits*, 357 F.3d 62, 67 (D.C. App. 2004); *Texas State Bank v. United States*, 60 Fed. Cl. 815, 818 (2004). *See also United States v. Hopkins*, 427 U.S. 123, 125 n.2, 96 S.Ct. 2508, 2510 n.2 (1976). Although the Supreme Court has never expressly held that a NAFI, as an instrumentality of the United States government, necessarily enjoys sovereign immunity, it has established that where NAFIs are "arms of the government deemed by it essential for the performance of governmental functions" and "share in fulfilling the duties entrusted to [the federal government]," they "partake of whatever immunities it may have under the [C]onstitution and federal statutes." *Standard Oil Co. of California v. Johnson*, 316 U.S. 481, 485, 62 S.Ct. 1168, 1170 (1942). At least one court has noted that "[f]ederal agencies or instrumentalities performing federal functions <u>always</u> fall on the 'sovereign' side of [the] fault line; that is why they possess immunity that requires waiver." *Auction Co. of America v. FDIC*, 132 F.3d 746, 752 (D.C. Cir.1997) (*emphasis in original*).

Based on these legal principles, lower federal courts repeatedly have concluded that the Federal Reserve enjoys sovereign immunity. *See, e.g.*, *Albrecht*, 357 F.3d at 67 ("we have no doubt that the Board of Governors enjoys sovereign immunity"); *Research Triangle Institute v. Board of Governors of the Fed. Reserve System*, 132 F.3d 985, 987-88 (4th Cir.1997). *See also Federal Reserve Bank of Boston v. Commissioner of Corporations and Taxation*, 499 F.2d 60, 62 (1st Cir. 1974) ("[F]ederal reserve banks . . . are plainly and predominantly fiscal arms of the federal government [and t]heir interests seem indistinguishable from those of the sovereign.").

15

As concluded by the *Albrecht* court:

> An integral part of the federal government, the Board conducts monetary policy, regulates banking institutions, and maintains the stability of the nation's financial system. . . . Therefore, at least with regard to the existence of sovereign immunity, [the plaintiffs'] <u>claim against the Board is little different from a claim against the United States</u>.

*Albrecht*, 357 F.3d at 67 (*emphasis added*).

In light of the foregoing, Carter simply cannot pursue a *qui tam* against the Federal Reserve.[4] His proposed *qui tam* litigation constitutes nothing more than an attempt to have the United States collect damages from the United States – in this case, damages alleged to be in the trillions. For any number of constitutional and policy objections, such a lawsuit cannot be countenanced.

---

[4] Although the precise issue of bringing a *qui tam* against the Federal Reserve has not been addressed in reported case law, the reasoning is analogous to federal cases that do not permit Sherman Act antitrust cases to be brought against the Federal Reserve:

> [T]he plaintiffs overlooks the fact that the Federal Reserve Banks are not private business corporations, but are part of a system created by Congress to perform important governmental functions. The Federal Reserve System, consisting of the Board of Governors and the twelve Federal Reserve Banks, functions as the nation's chief money manager. It is this nation's central bank, performing a vital governmental role. . . . As an agency of the federal government the Federal Reserve System may not be sued under the Sherman Act.

*Jet Courier Services, Inc. v. Federal Reserve Bank of Atlanta*, 713 F.2d 1221, 1228 (6th Cir. 1983). *See also Federal Reserve Bank of Boston v. Commissioner of Corporations and Taxation*, *supra*, 499 F.2d at 62 (the Federal Reserve enjoys sovereign immunity for purposes of state taxation); *Berini v. Federal Reserve Bank of St. Louis*, 420 F.Supp.2d 1021, 1023-24 (E.D. Mo. 2005) (Federal Reserve was a federal government instrumentality such that its employee benefit plans were government plans exempt from ERISA)

## V. Carter may not maintain a *qui tam* action under the FCA as a *pro se* litigant.

Carter has brought his *qui tam* action against the Federal Reserve as a *pro se* litigant.[5] By its plain language, the FCA is silent on whether a private individual not utilizing the services of an attorney can bring a *qui tam* suit. Nonetheless, several federal courts, including the Eighth Circuit, have concluded that *pro se* litigants may <u>not</u> maintain a *qui tam* action under the FCA. *See*, *e.g.*, *Timson v. Sampson*, 518 F.3d 870, 873 (11th Cir. 2008); *Stoner v. Santa Clara County Office of Education*, 502 F.3d 1116, 1126-28 (9th Cir. 2007); *United States ex rel. Lu v. Ou*, 368 F.3d 773, 775-76 (7th Cir. 2004); *United States v. Onan*, 190 F.2d 1, 6-7 (8th Cir. 1951). Although the application of this rule seems harsh, the reasoning of these courts is persuasive.

It has been long established that an individual wanting to prosecute or defend an action in federal court must be represented by a lawyer admitted to practice before that court (or a lawyer admitted *pro hac vice* for a particular matter), unless such individual is permitted to proceed *pro se* under 28 U.S.C. § 1654. That statute provides:

> In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

28 U.S.C. § 1654. While this provision allows a litigant like Carter to prosecute his own actions *in propria persona,* that right is personal to him, and absent some other statutory authorization, a *pro se* litigant has no authority to prosecute an action in federal court on behalf of others.

---

[5] On or about March 1, 2012, Carter filed with the Court his NOTICE OF INTENT TO RETAIN COUNSEL. To date, however, no attorney has entered an appearance on behalf of carter in this action.

However, a relator bringing a *qui tam* action pursuant to 31 U.S.C. § 3730(b)(1) brings the case "for the person <u>and for the United States Government</u> . . . in the name of the Government." 31 U.S.C. § 3730(b)(1) (*emphasis added*). The FCA motivates "a private individual [to] bring suit in federal court on behalf of the United States" by effecting a partial assignment of the government's damages claim to the relator. *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 768, 120 S.Ct. 1858, 1871 (2000). Although this partial assignment allows the relator asserting the government's injury to satisfy the requirements of Article III standing, it does not transform a *qui tam* action into the relator's "own case" for purposes of § 1654.

Because the general *pro se* provision of 28 U.S.C. § 1654 does not authorize Carter to proceed *pro se* on behalf of the government, he must identify an alternate source of authority granting him this privilege. Cater cannot do this. As previously noted, the FCA itself does not authorize a relator to prosecute a violation *pro se*. While the FCA does broadly give a relator the "right to conduct the action" [31 U.S.C. § 3730(c)(3)], no language in the FCA enables a relator to conduct the action without a licensed attorney. As long ago concluded by the Eighth Circuit, given the fact that Congress did not expressly authorize a *qui tam* relator to proceed *pro se* when acting on behalf of the United States, it "must have had in mind that such a suit would be carried on in accordance with the established procedure which requires that only one licensed to practice law may conduct proceedings in court for anyone other than himself." *United States v. Onan*, *supra*, 190 F.2d at 6.

18

For the reasons set out herein, the United States and the undersigned representative of the Attorney General, pursuant to the authority granted by 31 U.S.C. § 3730(c)(2)(A), respectfully requests that the Court lift the seal in this matter and dismiss the case for a lack of subject matter jurisdiction.

Respectfully submitted,

David M. Ketchmark
Acting United States Attorney

By  /s/ *Jeffrey P. Ray*

Jeffrey P. Ray
Deputy United States Attorney
Missouri Bar No. 35632

Charles Evans Whittaker Courthouse
400 East 9th Street, Fifth Floor
Kansas City, MO 64106
(816) 426-3130
FAX: (816) 426-3165
E-MAIL: jeffrey.ray@usdoj.gov

ATTORNEYS FOR THE UNITED
STATES OF AMERICA

# CERTIFICATE OF SERVICE

The undersigned Deputy United States Attorney hereby certifies that a true and correct copy of the foregoing **MOTION OF THE UNITED STATES TO DISMISS QUI TAM ACTION (WITH SUPPORTING SUGGESTIONS INCORPORATED)** was electronically filed with the Clerk of the Court pursuant to the Court's procedures for filings in cases under seal on this 30th day of March, 2012. In addition, a true and correct copy of this **MOTION OF THE UNITED STATES TO DISMISS QUI TAM ACTION (WITH SUPPORTING SUGGESTIONS INCORPORATED)** was placed in the first class U.S. Mail, postage prepaid, and addressed to:

James Carter
330905 East Highway Two
Harrisonville, Missouri 64701

PRO SE RELATOR

on this 30th day of March, 2012. Pursuant to the Local Rules and Orders of this Court, the original of this **MOTION OF THE UNITED STATES TO DISMISS QUI TAM ACTION (WITH SUPPORTING SUGGESTIONS INCORPORATED)** will be maintained by the undersigned Deputy United States Attorney.

/s/ *Jeffrey P. Ray*
JEFFREY P. RAY
Deputy United States Attorney